[Cite as *Croxton v. Maggiore*, 2017-Ohio-1535.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BEAU CROXTON, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant/ | : | Hon. Craig R. Baldwin, J. |
| Cross-Appellee | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| CHRISTOPHER MAGGIORE, ET AL., | : | Case No. 2016CA00165 |
| | : | 2016CA00029 |
| Defendants - Appellees | : | 2016CA00097 |
| Cross-Appellants, | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court of Common Pleas, Case No. 2015 CV 00692

JUDGMENT: Affirmed

DATE OF JUDGMENT: April 24, 2017

APPEARANCES:

For Plaintiff-Appellant/Cross-Appellee

SIDNEY N. FREEMAN
ROBERT MCNAMARA
McNamara, Demczyk Co., LPA

12370 Cleveland Avenue, N.W.
P.O. Box 867
Uniontown, Ohio 44685

Counsel for Attorney Robert McNamara, Attorney Sidney Freeman and McNamara, Demczyk Co., LPA

MATTHEW FORTADO
1700 W. Market Street #177
Akron, Ohio 44313

For Defendants-Appellees/Cross Appellants

RALPH F. DUBLIKAR
Baker, Dublikar, Beck, Wiley & Mathews
400 South Main Street
North Canton, Ohio 44720

*Baldwin, J.*

{¶1}    Plaintiff-appellant Beau Croxton appeals from the January 12, 2016, April 13, 2016, August 9, 2016 and August 12, 2016 Judgment Entries of the Stark County Court of Common Pleas. Defendants-appellees Christopher Maggiore, et al. have filed a cross-appeal.

STATEMENT OF THE FACTS AND CASE

{¶2}    Appellant Beau Croxton and Robert S. McLain ("McLain") were members of four separate LLCS, namely appellees 1019 Sports Group LLC dba Jerzee's, Sports Page Group LLC dba Jerzee's Fulton Road, James Place Development LLC, and James Place Development II, LLC. On April 11, 2014, a Unit Purchase Agreement was entered into between appellant and McClain.  Pursuant to the terms of the same, McClain agreed to purchase appellant's 25% interest in 1019 Sport Page Group LLC for $185,000.00. On the same date, a Unit Purchase Agreement was entered into between the two. Under the terms of the same, McLain agreed to purchase appellant's 35% interest in Sports Page Group LLC for $265,000.00 plus transfer title of a specified truck to appellant.

{¶3}    There were two other Unit Purchase Agreements entered into between the parties on April 11, 2014. Pursuant to the terms of one of the Agreements, McClain agreed to purchase appellant's 50% interest in James Place Development LLC for $50,000.00 while pursuant to the terms of the other Agreement, McLain agreed to purchase appellant's 50% interest in James Place Development II, LLC for $200,000.00. Of the $200,000.00, $135,000.00 was to be placed in escrow with Alpha Land Title Agency, Inc. to satisfy tax liens. In addition to the above, in exchange for selling his membership interest in the businesses to McLain, appellant received the release of a loan obligation from Huntington Bank that was over $1.8 million, Indemnification and release of a loan

from Joseph Piscazzi in amount of $300,000.00 and forgiveness of interest on a $150,000.00 cognovit promissory note.

{¶4}   Each of the Unit Purchase Agreements contained the following paragraphs:

Entire Agreement.   Each party acknowledges that this Agreement constitutes the complete and exclusive statement of the Agreement between the parties, which supersedes and merges all prior proposals, understandings, and all other agreements, oral and written, between the parties relating to the subject matter of this Agreement.

Release by Seller.  Seller [Croxton] and all of the Seller's entities hereby release and discharge Buyer and Company, as well as Company's officers, directors, members, employees and agents, from any and all claims, actions, damages, or other liability related to Seller's ownership or involvement in Company, including but not limited to any alleged commissions owed, payments for service rendered, loans to Company, contributions made to Company, or any other amounts that may be due Seller or any of Seller's related entities.

{¶5}   Both parties were represented by counsel at the time the Unit Purchase Agreements were signed.

{¶6}   In addition, at the same time that the Unit Purchase Agreements were signed, on April 11. 2014, appellant also signed an Amended and Restated Cognovit Promissory Note which referenced an earlier loan that McLain had made to appellant in 2007 that remained unpaid. In accordance with the Amended and Restated Cognovit Promissory Note, appellant agreed to repay a $150,000.00 loan that McLain had made to him, without interest, on or before April 1, 2015. The note provided that interest would

not accrue until April 1, 2015 and that appellant would pay any and all costs and expenses, including attorney's fees, which might be incurred for the enforcement and collection of the note.

{¶7} McLain passed away on June 20, 2014. Appellant did not make any claim against the Estate of Robert McLain until September 22, 2015.

{¶8} On April 1, 2015, appellant filed a Verified Complaint against appellees Christopher Maggiore and David McLain, Co-Executors of the Estate of Robert McLain, Deceased, as well as against 1019 Sports Group LLC, Sports Page Group LLC, James Place Development LLC, and James Place Development II, LLC. The Verified Complaint included a discovery count. Appellant filed a Verified Amended Complaint on September 22, 2015. Appellant, in the Verified Amended Complaint, which added Alpha Land Title Agency, Inc. as a new party defendant, sought indemnification for certain taxes and asserted claims for breach of fiduciary duty, breach of contract and fraud/economic coercion. Appellant also sought a declaration that the cognovit note was void, invalid or unenforceable and sought an injunction/stay.

{¶9} Appellees, on October 6, 2015, filed an answer to the Verified Amended Complaint with a counterclaim. Appellees, in their counterclaim, alleged, in part, that appellant had failed to pay any part of the $150,000.00 Amended and Restated Cognovit Promissory Note and that he was in default. They further alleged that appellant had converted money, property, equipment and other assets from appellees 1019 Sports Group LLC and Sports Page Group LLC.

{¶10} On December 4, 2015, appellees filed a Motion for Summary Judgment on the Verified Amended Complaint. A separate Motion for Partial Summary Judgment on the Counterclaim was filed on the same date by appellees Christopher Maggiore and

David McLain as Co-Executors of the Estate of Robert McLain. Appellant, on December 4, 2015, filed a Motion for Partial Summary Judgment or to Deem Facts Admitted.

{¶11} As memorialized in a Judgment Entry filed on January 12, 2016, the trial court granted appellees' Motion for Summary Judgment and their Motion for Partial Summary Judgment on the counterclaim. On January 21, 2016, appellees filed a Motion for Attorneys' Fees, Interest, Court Costs and Expenses, citing to R.C. 2323.51, Civil Rule 11 and language contained within the Amended and Restated Cognovit Promissory Note.

{¶12} Appellant, on February 10, 2016, filed a Motion to Modify or Vacate [the January 12, 2016] Judgment Entry and for Evidentiary Hearing. On the same date, appellant filed an appeal from the trial court's January 12, 2016 Judgment Entry. The appeal was assigned Case No. 2016CA00029. After appellees filed a Motion to Dismiss Appeal or in Alternative, Motion for Remand, this Court, pursuant to a Judgment Entry filed on March 15, 2016, remanded the matter to the trial court to rule on any outstanding motions on or before April 11, 2016.

{¶13} The trial court, in two separate Judgment Entries filed on April 13, 2016, overruled appellant's Motion to Modify or Vacate Judgment Entry and for Evidentiary Hearing and   appellees' Motion for Attorneys' Fees, Interest, Court Costs and Expenses.

{¶14} Appellees, on April 28, 2016, filed a Notice of Cross Appeal from the trial court's April 13, 2016 Judgment Entry overruling their  Motion for Attorneys' Fees, Interest, Court Costs and Expenses.  Appellant, on May 11, 2016, filed a  Notice of Appeal from the trial court's April 13, 2016 Judgment Entry overruling his Motion to Modify or Vacate Judgment Entry and for Evidentiary Hearing. The appeal was assigned Case No. 2016CA00097.

{¶15} Pursuant to a Judgment Entry filed by this Court on May 23, 2016 in Case No. 2016CA00029, the matter was remanded to the trial court for purposes of ruling on all pending motions, issues and claims by June 30, 2016. The remand was later extended.

{¶16} Appellees, on May 31, 2016, filed a Motion for Final Judgment on Counterclaim. Following an evidentiary hearing, the trial court, via a Judgment Entry filed on August 9, 2016, granted final judgment in the amount of $150,000.00 plus interest in the amount of $16,000.00 and legal fees in the amount of $66,180.00, for a total of $232,180.00.  The trial court, in its Judgment Entry, stated that it was denying the charge of $4,000.00 for conversion. An Amended Judgment Entry was filed on August 12, 2016 to clarify that the trial also was granting appellees judgment on their claim for conversion in the amount of $4,000.00. The trial court, in such Judgment Entry, stated that it was dismissing without prejudice "[a]ll claims not addressed by this Court" and that there was no cause for delay.

{¶17} On September 8, 2016, appellant filed a Notice of Appeal from the trial court's August 9, 2016 Judgment Entry and August 12, 2016 Judgment Entry. The appeal was assigned Case No. 2016CA00165.  The three appeals were consolidated by this Court.

{¶18} Appellant now raises the following assignments of error on appeal:

{¶19} I.  THE TRIAL COURT ERRED, TO THE PREJUDICE OF MR. CROXTON, WHEN IT GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON MR. CROXTON'S AMENDED VERIFIED COMPLAINT.

{¶20} II.  THE TRIAL COURT ERRED, TO THE PREJUDICE OF MR. CROXTON, WHEN IT GRANTED MR. MAGGIORE'S AND MR. DAVID MCLAIN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THEIR COUNTERCLAIM.

{¶21} III. THE TRIAL COURT ERRED, TO THE PREJUDICE OF MR. CROXTON, WHEN IT FAILED TO GRANT HIS MOTION FOR PARTIAL SUMMARY JUDGMENT, TO DEEM FACTS ADMITTED OR STRIKE THE AFFIDAVIT OF RICHARD D. ALLISON.

{¶22} IV. THE TRIAL COURT ERRED, TO THE PREJUDICE OF MR. CROXTON, WHEN IT FAILED TO GRANT HIS MOTION TO MODIFY OR VACATE JUDGMENT ENTRY AND FOR THE EVIDENTIARY HEARING; THEREBY DEPRIVING HIM OF HIS DAY IN COURT, AS PROTECTED BY THE OHIO CONSTITUTION, ART. I, SEC. 16, AND DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶23} V. THE TRIAL COURT ERRED, TO THE PREJUDICE OF MR. CROXTON, WHEN IT FAILED TO PERMIT TESTIMONY OF HIS WITNESSES, OR CONSIDER HIS CLAIMS EITHER AS OFFSET DAMAGES OR RECOUPMENT, AT THE HEARING IT CONDUCTED FOR DAMAGES ON JULY 14, 2016, THEREBY DEPRIVING HIM OF HIS DAY IN COURT, AS PROTECTED BY THE OHIO CONSTITUTION, ART. I, SEC. 16, AND DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶24} Appellees have filed a cross-appeal, raising the following assignment of error:

{¶25} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DEFENDANTS/APPELLEES' MOTION FOR ATTORNEYS' FEES, INTEREST, COURT COSTS AND EXPENSES PURSUANT TO CIV.R. 11 AND OHIO REVISED CODE 2323.51.

I

{¶26} Appellant, in his first assignment of error, argues that the trial court erred in granting summary judgment in favor of appellees on appellant's Amended Verified Complaint.

{¶27} Civil Rule 56(C) states, in pertinent part, as follows:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

{¶28} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

{¶29} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264. Once the moving party meets its initial burden, the burden shifts to the

nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

**{¶30}** The trial court, in its January 12, 2016 Judgment Entry, found that appellant's claims against the Estate of Robert McLain were barred pursuant to R.C. 2117.06(C) and that the language contained in the releases in the Unit Purchase Agreements barred appellant's claims.

**{¶31}** R.C. 2117.06(C) states as follows:

(C) Except as provided in section 2117.061 of the Revised Code, a claim

that is not presented within six months after the death of the decedent shall

be forever barred as to all parties, including, but not limited to, devisees,

legatees, and distributees. No payment shall be made on the claim and no

action shall be maintained on the claim, except as otherwise provided in

sections 2117.37 to 2117.42 of the Revised Code with reference to

contingent claims.

**{¶32}** There is no dispute that appellant's claims were not brought within six months of Robert McLain's death on June 20, 2014. Appellant, however, argues that his claims are "contingent claims". Under R.C. 2117.37, if a claim is contingent at the time of a decedent's death and a cause of action subsequently accrues on the claim, the claim must be presented within one year after the decedent's death, or within two months after the cause of action accrued, whichever is later. "A contingent claim is one in which the liability thereon is 'dependent upon some uncertain future event which may or may not

occur.' " *In re Estate of Bickham*, 85 Ohio App.3d 634, 637, 620 N.E.2d 913 (3rd Dist. 1993), quoting *Pierce v. Johnson* , 136 Ohio St. 95, 98, 23 N.E.2d 993 (1939).

**{¶33}** We concur with the trial court that any claims that appellant might have had against the Estate of Robert McLain or other appellees, whether for economic duress, fraud or an invalid release, "necessarily accrued prior to the time that [appellant] entered into the various Unit Purchase Agreements." While appellant argues that the discovery rule applies and that his claims are not time- barred, as noted by the court in *Dibert v. Watson,* 3rd Dist. Logan No. 8-09-02, 2009 -Ohio- 2098, paragraph 15:"[u]nless the claim falls into one of the enumerated exceptions provided by the revised code, R.C. 2117.06's statute of limitations applies. The discovery rule is an equitable principle outside the purview of these statutory exceptions, and thus, may not be used to evade R.C. 2117.06's six-month statute of limitations."

**{¶34}** Appellant, in his first assignment of error, further challenges the trial court's finding that appellees were entitled to summary judgment based on the releases signed by appellant as part of the Unit Purchase Agreements.  As is stated above, each of the Unit Purchase Agreements contained the following paragraphs:

Entire Agreement.   Each party acknowledges that this Agreement constitutes the complete and exclusive statement of the Agreement between the parties, which supersedes and merges all prior proposals, understandings, and all other agreements, oral and written, between the parties relating to the subject matter of this Agreement.

The paragraph entitled "Release by Seller" contained in each of the Agreements provides as follows:

Release by Seller.  Seller [Croxton] and all of the Seller's entities hereby release and discharge Buyer and Company, as well as Company's officers, directors, members, employees and agents, from any and all claims, actions, damages, or other liability related to Seller's ownership or involvement in Company, including but not limited to any alleged commissions owed, payments for service rendered, loans to Company, contributions made to Company, or any other amounts that may be due Seller or any of Seller's related entities.

{¶35} The trial court, in its January 12, 2016 Judgment Entry, found that the contract language was clear and unambiguous and that appellant clearly indicated his intention to completely release Robert McLain and the four companies from "any and all claims arising out of his interest in the four companies." The trial court further noted that appellant received substantial remuneration in exchange for the releases.

{¶36}  Appellant now contends that the releases should be invalidated on the basis of economic duress and fraud. The Supreme Court of Ohio has held that, "[t]o avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one party assented merely because of difficult circumstances that are not the fault of the other party." *Blodgett v. Blodgett,* 49 Ohio St.3d 243, 551 N.E.2d 1249, syllabus (1990). Three elements are common to situations were duress has been found to exist: (1) one side involuntarily accepted the terms of another; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of the coercive acts of the opposite party. *Id.* at 246, 551 N.E.2d 1249. Dissatisfaction with or general remorse about consenting to a settlement agreement does

not constitute duress. *Murray v. Murray,* 6th Dist. Lucas No. L–09–1305, 2011–Ohio–1546.

**{¶37}** In the case sub judice, appellant was represented by counsel during the negotiations that resulted in the signing of the Unit Purchase Agreements and also had access to the services of his accountant.  Correspondence was exchanged between appellant's counsel and counsel for McLain and the companies over a period of time prior to entering into the Agreements and appellant received approximately $3,000,00.00 in a combination of cash, interest forgiveness, or release from debt.  In addition, appellant, in an affidavit filed on December 22, 2015, admitted that he previously had free access to the QuickBooks accounting data base to write checks for operations of the businesses.

**{¶38}** Appellant also contends that he was fraudulently induced into signing the Unit Purchase Agreements by Robert McLain, who he contends hid the true financial conditions of Jerzee's North and Jerzee's South from him. When it is established that release of a claim was obtained by fraud in the inducement, that matter is voidable and a subsequent fraud claim cannot be pursued unless the party claiming fraud has tendered back any consideration received. *Picklesimer v. Baltimore & O.R. Co.,* 151 Ohio St. 1, 4, 84 N.E.2d 214 (1949). As noted by appellees, there is no evidence that appellant returned any of the money that he received from appellees as consideration for the sale of his interest in the companies or that he was reinstated on the various promissory notes and mortgages from which he was released as part of the Unit Purchase Agreements.

**{¶39}** Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of appellees on appellant's Verified Amended Complaint.

**{¶40}** Appellant's first assignment of error is, therefore, overruled.

II

{¶41} Appellant, in his second assignment of error, argues that the trial court erred in granting the Motion for Partial Summary Judgment on their counterclaim filed by appellees Christopher Maggiore and David McLain as Co-Executors of the Estate of Robert McLain.

{¶42} As is stated above, appellees, in their counterclaim, alleged, in part, that appellant had failed to pay any part of the $150,000.00 Restated Cognovit Promissory Note and was in default and that he had converted money, property, equipment and other assets from appellees 1019 Sports Group LLC and Sports Page Group LLC. Appellant, during his deposition, conceded that he had not paid any part of the $150,000.00 Reinstated Cognovit Note. Appellant also does not dispute that he took "roughly" $4,000.00 from one of the businesses and refused to return the same. Appellant's Deposition at 124. Appellant now argues that the trial court erred in granting summary judgment on the counterclaim "unless and until [appellant's] affirmative defenses of offset/recoupment had been resolved."

{¶43} "A claim of a defendant which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common-law theory of recoupment, <u>when the claim arises out of the same transaction as the plaintiff's claim for relief,</u> and when it is offered only to reduce the plaintiff's right to relief." Riley v. Montgomery, 11 Ohio St.3d 75, 463 N.E.2d 1246 (1994), paragraph one of the syllabus. (Emphasis added). In the case sub judice, appellees' counterclaim alleged that appellant had defaulted on an Amended and Restated Cognovit Promissory Note and had converted money. As is stated above, the Amended and Restated Cognovit Promissory Note referenced an earlier cognovit promissory note dated July 23, 2007 that

remained unpaid. In contrast, appellant's claim did not arise out of the same transaction, but rather the Unit Purchase Agreements, as well as claims for indemnity, taxes, fraud and unjust enrichment. We find, therefore that the defense of recoupment is not available to appellant.

**{¶44}** Appellant also sought to assert the defense of offset/set-off. "A set-off is a demand asserted to diminish or extinguish a plaintiff's demand, which arises out of a transaction different from that sued on. 3 Moore's Federal Practice, para. 13.02, note 1 (1978). A set-off, which is in the nature of an independent affirmative action, would be time-barred." *Akron National Bank & Trust Co. v. Roundtree,* 60 Ohio App.2d 13, 17, 395 N.E.2d 525 (9th Dist. 1978). Because, as is discussed in appellant's first assignment of error, appellant's claims were time-barred under R.C. 2117.06, the defense of setoff is also time-barred and is not available to appellant.

**{¶45}** Based on the foregoing, we find that the trial court did not err in granting the Motion for Partial Summary Judgment  filed by such appellees.

**{¶46}** Appellant's second assignment of error is, therefore, overruled.

III

**{¶47}** Appellant, in his third assignment of error, argues that the trial court erred when it failed to grant his Motion for Partial Summary Judgment, or to Deem Facts Admitted or his Motion to Strike the Affidavit of Richard D. Allison.

**{¶48}** Appellant, on December 4, 2015, filed a Motion for Partial Summary Judgment, or to Deem Facts Admitted. Appellant, in his motion, sought an order from the trial court that his decision to enter into the Unit Purchase Agreements was the result of fraud and economic coercion or, in the alternative,  requested that the court deem admitted for purposes of trial that Robert McLain had improperly received distributions of

profits from Jerzee's South and Jerzee's North.  On December 24, 2015, appellant filed a Motion to Strike the Affidavit of Richard D. Allison, appellees' CPA.

**{¶49}** However, as is stated above in our discussion of appellant's first assignment of error, we found that the trial court, in this matter, did not err in granting summary judgment in favor of appellees on appellant's Verified Complaint on the basis that appellant had failed to timely make a claim against the Estate of Robert McLain and had voluntarily signed the releases contained in the Unit Purchase Agreements.

**{¶50}** Based on the foregoing, we find that the trial court did not err in failing to grant appellant's motions.

**{¶51}** Appellant's third assignment of error is, therefore, overruled.

IV

**{¶52}** Appellant, in his fourth assignment of error, maintains that the trial court erred in failing to grant his February 10, 2016 Motion to Modify or Vacate the January 12, 2016 Judgment Entry and for Evidentiary Hearing.

**{¶53}** The trial court, pursuant to a Judgment Entry filed on January 12, 2016, granted appellees' Motion for Summary Judgment on appellant's Verified Amended Complaint and also granted partial summary judgment on appellees' counterclaim. Appellant, on February 10, 2016, filed a Motion to Modify or Vacate the January 12, 2016 Judgment Entry and for Evidentiary Hearing and, on the same date, filed an appeal from such Judgment Entry. This Court remanded the matter to the trial court to rule on any outstanding motions.  Thereafter, the trial court, as memorialized in a Judgment Entry filed on April 13, 2016, denied appellant's motion.

**{¶54}** Appellant, in his February 10, 2016 motion, asked the trial court, in part, for modification of the Judgment Entry to allow an evidentiary hearing on outstanding claims,

issues and other matters contained within his Verified Amended Complaint. However, the trial court had granted summary judgment on appellant's Verified Amended Complaint on January 12, 2016. This Court remanded the case to the trial court to resolve the counterclaim since, while the trial court had granted appellees partial summary judgment on the counterclaim, it had not entered a final judgment with respect to damages on the counterclaim. Moreover, while appellant argues that, with respect to appellee's counterclaim, he should be able to assert the defenses of recoupment and/or offset, as is stated above in our discussion of appellant's second assignment of error, neither is available to him.

{¶55} Based on the foregoing, appellant's fourth assignment of error is overruled.

V

{¶56} Appellant, in his fifth assignment of error, argues that the trial court erred when it failed to permit the testimony of appellant's witnesses, or consider his claims either as offset damages or recoupment, at the July 14, 2016 damages hearing.

{¶57} Appellees, on May 31, 2016, filed a Motion for Final Judgment on the Counterclaim and requested an oral hearing. Appellees, in their motion, asked the trial court to determine the amount of damages, interest, attorneys' fees and costs that they incurred as a result of appellant's default on the Amended and Restated Cognovit Promissory Note. The trial court, in an order filed on June 23, 2016, stated that the only issue to be considered at the July 14, 2016 hearing was "the amount of attorneys' fees that have been incurred in connection with the Cognovit Promissory Note".

{¶58} At the July 14, 2016 hearing, appellant's counsel sought to put on evidence related to offset and indicated to the trial court that "[t]he offset obviously involves matter that were, they weren't necessarily addressed but they were embraced within the Court's

orders that there was a release and that there was a violation of the Statute of Limitations." Transcript of July 14, 2016 hearing at 5. The trial court denied appellant's request, noting that the only issue before the Court was the issue of legal fees. After the hearing, appellant, in accordance with the trial court's instruction, proffered his witnesses' testimony.

**{¶59}** We find that the trial court did not err in acting as it did. By the time of the July 14, 2016 hearing, the trial court had granted summary judgment in favor of appellees on the Verified Amended Complaint and partial summary judgment on the counterclaim. The amount of attorneys' fees was the only issue for determination. Moreover, as is discussed above, the defenses of recoupment and setoff were not available to appellant.

**{¶60}** Appellant's fifth assignment of error is, therefore, overruled.

CROSS-APPEAL

**{¶61}** Appellees, in their sole assignment of error on cross-appeal, argue that the trial court erred in denying their January 21, 2016 Motion for Attorneys' Fees, Interest, Court Costs and Expenses pursuant to Civ.R. 11 and R.C. 2323.51. The trial court, upon review of the briefs, had denied appellees' motion as memorialized in a Judgment Entry filed on April 13, 2016.

**{¶62}** Civ.R. 11 governs the signing of motions, pleadings, and other documents. The rule states that "[e]very pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record * * *." By signing the pleading or motion, the attorney certifies that the attorney has read the motion; to the best of the attorney's knowledge, information, and belief there is good ground to support the motion; and that the motion is not interposed for delay. *See* Civ.R. 11. To impose a sanction under Civ.R. 11, the trial court must determine whether the attorney met the

three standards. *Namenyi v. Tomasello,* 2nd Dist. Greene No.2013–CA–75, 2014–Ohio–4509, ¶ 14.

**{¶63}** "Civ.R. 11 employs a subjective bad faith standard." *Ferron v. Video Professor, Inc.,* 5th Dist. Delaware No. 08–CAE–09–0055, 2009–Ohio–3133, ¶ 77 quoting *Stone v. House of Day Funeral Serv., Inc.* 140 Ohio App.3d 713, 721, 748 N.E.2d 1200 (6th Dist.2000). "If any one of the three Civ.R. 11 requirements is not satisfied, the trial court must then determine whether the violation was willful as opposed to merely negligent." *Namenyi,* 2014–Ohio–4509 at ¶ 14 quoting *Ponder v. Kamienski,* 9th Dist. Summit No. 23270, 2007–Ohio–5035, ¶ 36. The attorney's actual intent or belief is relevant to the determination of willfulness. *Ferron,* 2009–Ohio–3133 at ¶ 77. If the trial court finds the Civ.R. 11 violation was willful, it may impose an appropriate sanction. *Namenyi,* 2014–Ohio–4509 at ¶ 14.

**{¶64}** The trial court's decision to impose sanctions cannot be reversed absent an abuse of discretion. *Ferron,* 2009–Ohio–3133 at ¶ 77.

**{¶65}** In contrast to Civ.R. 11, the imposition of sanctions under R.C. 2323.51 requires the trial court to find frivolous conduct. R.C. 2323.51 provides that a court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. Prior to awarding damages under R.C. 2323.51, the trial court must hold a hearing "to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award[.]" R.C. 2323.51(B)(2)(a).

**{¶66}** "Frivolous conduct" is the conduct of a party to a civil action or of the party's counsel that satisfies any of the following four criteria**:**

(i)      It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii)      It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii)      The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv)      The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

**{¶67}** R.C. 2323.51(A)(2)(a)(i)-(iv).

**{¶68}** The question of what constitutes frivolous conduct may be either a factual determination or a legal determination. *Ferron,* 2009–Ohio–3133 at ¶ 44. No single standard of review applies in R.C. 2323.51 cases. *Wiltberger v. Davis,* 110 Ohio App.3d 46, 51, 673 N.E.2d 628 (10th Dist.1996). The finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed. *Namenyi,* 2014–Ohio–4509 at ¶ 16. A determination that the conduct is not warranted

under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis. *Ferron,* 2009–Ohio–3133 at ¶ 44. With respect to purely legal issues, we follow a de novo standard of review and need not defer to the judgment of the trial court. *Id.* However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations and will not disturb such factual determinations where the record contains competent, credible evidence to support such findings. *Id.*

**{¶69}** The trial court, in its April 13, 2016 Judgment Entry, found that appellant had not willfully or otherwise violated Civ.R. 11 or R.C. 2923.51 and that he had filed a viable cause of action against appellees.

**{¶70}** Both appellant and his attorneys filed separate memorandum in opposition to appellees' Motion for Attorneys' Fees, Interest, Court Costs and Expenses. Appellant's counsel, in their memorandum, noted that all of the assertions in the Verified Complaint and Verified Amended Complaint were sworn to by appellant and that they did not have any information that appellant was not honest.  They further noted, as did appellant, that, prior to September 22, 2015, the date that the Verified Amended Complaint was filed, appellant and his counsel obtained an opinion from Larry Poulus, a long-term practicing probate attorney as to the viability of their claims. Poulus, in his affidavit which was attached to appellant's March 22, 2016 memorandum in opposition to appellees, motion, stated, in relevant part, as follows**:**

> 3.  Affiant is fully knowledgeable of Ohio law as it relates to filing claims
>
> against an Estate in Probate Court.  Ohio Revised Code section 2117.37
>
> allows filing of a claim after this six (6) month deadline if it is a contingent
>
> claim.

4.   Affiant states that prior to September 22, 2015 (which he has been informed, is the date the Plaintiff filed his Verified Amended Complaint), Attorney McNamara discussed the filing of a claim against the Executors of the Estate of David McLain as a contingent claim based on those claims being contingent upon the findings of the Court as to Mr. Croxton's ownership of stock in specific years as it related to an indemnification agreement for taxes, and as to the validity of the releases which he had signed due to allegations of fraud.

5.   Based upon my aforesaid education, training and experience and upon the facts represented to me by Attorney McNamara, the aforesaid claims made by Attorney McNamara and Attorney Freemen, as well as the law firm of McNamara, Demczyk Co., L.P.A., either were warranted as contingent claims under existing law or could have been supported by a good faith argument for an extension, modifications or reversal of existing law, and that a reasonable attorney could have made the same arguments in support of such claims.  See, Weaver v. Pillar, 2013-Ohio-1052 (¶¶19,21), 2013 WL 1187906 (C.A. Tuscarawas (unreported #2012-CA-32), March 18, 2013) (attached).

**{¶71}** Counsel for appellees further indicated that, as a result of the filing of the initial complaint in this case, they were able to obtain discovery that was needed for appellant to file his tax returns and that, after the same was received, they deleted the discovery count when filing the Verified Amended Complaint.

**{¶72}** We find, based upon the above and the evidence and arguments presented in the lower court, that the trial court did not abuse its discretion. The trial court's decision

was not arbitrary, unconscionable or unreasonable. As noted by the trial court, its inquiry was "limited to a determination that the claim was warranted under existing law, not whether or not [appellant] would prevail on such claim."

{¶73} Appellees' assignment of error on cross-appeal is overruled.

{¶74} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Earle Wise, J. concur.